**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

USG INSURANCE SERVICES, INC., et al. )
          Plaintiffs, )
                             )    Civil Action No. 2:16-cv-01024
v.                            )
                             )    Judge Mark R. Hornak
LUCAS A. BACON, et al. )
          Defendants. )

## OPINION

**Mark R. Hornak, United States District Judge**

Lucas Bacon, a former management-level employee of USG Insurance Services of Michigan, Inc. resigned to take a job for a competitor, R-T Specialty, LLC. Spurned by the loss of Bacon, USG and its related companies filed suit against both Bacon and R-T Specialty alleging eleven state and two federal claims, including violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act ("CFAA"). Defendants filed a Motion to Dismiss Counts 3, 4, and 12 of USG's Amended Complaint (ECF No. 9).

Defendants' Motion to Dismiss will be granted as to Count 12, the CFAA claim, and that Count will be dismissed without prejudice. Defendants' Motion to Dismiss will be denied in all other respects.

## I.    BACKGROUND[1]

USG is a wholesale insurance broker that sells insurance on behalf of carriers to retail agents, who are its primary customers. ECF No. 1-2 at 62-63. USG sells to almost 7,000 agents and has invested considerable resources into developing and maintaining those business relationships. ECF No. 1-2 at 64-65. USG uses proprietary software, for example, to assemble

---

[1] The Court accepts as true USG's allegations in its Amended Complaint (ECF No. 1-2 beginning at 61) and all reasonable inferences that can be drawn from them.

and store confidential business information relating to the retail agents, including business preferences, policy information, competitor data, marketing information, and communication records. ECF No. 1-2 at 64-66. This information, USG alleges, is critical to preserving its client relationships, expanding its customer base, and generally maintaining a competitive advantage over other insurance brokers. ECF No. 1-2 at 65-66.

In 2003, USG hired Defendant Lucas Bacon as an Underwriter and Broker. ECF No. 1-2 at 68. Over the next eight years, USG promoted Bacon a number of times—first to Brokerage Manager of the Michigan Division, then to Production Manager, and then, in 2010, to Branch Manager of the Pennsylvania Division. ECF No. 1-2 at 71-73. Finally, in 2011, Bacon was promoted to Regional Manager in charge of USG's Michigan and Pennsylvania divisions, a position which he held until 2014. ECF No. 1-2 at 73-74.

When Bacon was hired by USG, he signed USG's Confidentiality and Non-Competition Agreement ("Agreement"). ECF No. 1-2 at 69-70, 103-05. The Agreement provided in sum and substance that Bacon would not disclose USG's confidential information to anyone outside the company, that he would return any confidential information in his possession if he left USG, and that he would not compete with USG for one year after his employment with USG ended. ECF No. 1-2 at 69-70, 103-05.

On April 7, 2016, Bacon abruptly resigned from USG and accepted a position as Branch Manager with Defendant R-T Specialty, a competing insurance broker. ECF No. 1-2 at 74. Although Bacon resigned on April 7, he stayed on at USG for the following day and a half— ostensibly to assist USG with transitioning his management responsibilities to other employees. ECF No. 1-2 at 75. USG alleges that during that transitionary time—but before his employment at USG officially ended—Bacon accessed some of USG's confidential information, including

2

policies he had sold for the past sixteen months, the expiration dates of those policies, the names of insureds, and the names and contact information of agents. ECF No. 1-2 at 75.

USG does not allege that it revoked Bacon's access to its computer systems or confidential information during this transitionary period. It does, however, allege that Bacon accessed and then misused confidential data to solicit business from USG's clients on behalf of his new employer, R-T Specialty. ECF No. 1-2 at 76-77. On his last day of work, for example, USG alleges that Bacon attempted to schedule a meeting with insurance carrier AmTrust E&S Insurance Services, Inc., another USG client, and that he later met with AmTrust in an attempt to divert their contract from USG to R-T Specialty. ECF No. 1-2 at 76-77. Bacon attempted to place insurance with Michigan Insurance Strategic Alliance, LLC and Insured of Berkfield & Co., LTD—USG clients—in the name of R-T Specialty after his employment. ECF No. 1-2 at 77. Bacon also, according to USG, contacted Kinsale Insurance—an agent USG made a proposal to immediately prior to Bacon's resignation—in an attempt to solicit their business for R-T Specialty. ECF No. 1-2 at 78. Bacon solicited a request for coverage for R-T Specialty from agent Morris Insurance Group—an agent that had originally submitted a request for that same coverage to USG. *Id.* Bacon also forwarded to his personal email account documents he received from an account executive at Setnor Byer Insurance & Risk, a company who was in contact with Bacon while he was with USG for the purposes of obtaining coverage through USG, for the purposes of soliciting Setnor Byer's business after his employment with USG. ECF No. 1-2 at 78-79. Bacon rescheduled a conference call with Atrium Risk Management Services, Ltd. that was supposed to take place while he worked for USG for a date when he would be working for R-T Specialty, informing Atrium that he was resigning from USG. ECF No. 1-2 at 81. Then, through his former assistant, Ms. Iorio, Bacon placed coverage for Atrium on behalf of R-T

Specialty, ECF No. 1-2 at 81, before asking Ms. Iorio to leave her employment at USG and join him at R-T Specialty. ECF No. 1-2 at 82-83.

USG also raises allegations against R-T Specialty. USG alleges that R-T Specialty has a pattern of recruiting employees from competitors to steal business, R-T Specialty and Bacon discussed the use of business contacts Bacon made while working at USG, Bacon took the actions that allegedly breached his fiduciary duty to USG for the benefit of R-T Specialty, R-T Specialty knew about Bacon's alleged breaches of fiduciary duty, R-T Specialty specifically agreed with Bacon that he would open an office in competition with USG, R-T Specialty facilitated Bacon's breaches by providing him with administrative support and financial support necessary to compete, and R-T Specialty offered to cover Bacon's legal expenses in anticipation of USG filing suit against him. *See* ECF No. 1-2 at 74, 82, 86-87.

## II.    **LEGAL STANDARD**

Under the familiar plausibility standard governing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and although a plaintiff is not required to make detailed factual allegations, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While "[t]he plausibility standard is not akin to a probability requirement," it nevertheless "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," therefore,

are not enough to survive a motion to dismiss, nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## III.    ANALYSIS

### A. Count 12: Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Defendants Bacon and R-T Specialty)

USG alleges Defendants Bacon and R-T Specialty violated two provisions of the CFAA: Section (a)(4) and Section (a)(5)(A). Section (a)(4) of the CFAA creates a private right of action against any person who "knowingly and with intent to defraud, accesses a computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains . . . anything of value." 18 U.S.C. § 1030(a)(4), (g). The value obtained must be more than merely the use of the computer if such use is worth less than $5,000 in any 1-year period. *Id.* § 1030(a)(4). Section (a)(5)(A) of the CFAA, on the other hand, creates a private right of action against any person who "knowingly causes the transmission of . . . information . . . and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." *Id.* § 1030(a)(5)(A). Damage means "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).

#### i.  Defendant Bacon

USG first argues that Bacon violated Section (a)(4) of the CFAA by "access[ing] a protected computer without authorization" or "exceed[ing] authorized access." *Id.* § 1030 (a)(4). A showing of at least one of these two acts is necessary to establish a violation of that Section. *Id.*

In support of its claim, USG makes the following specific factual allegations: Two days before resigning, Bacon generated a copy of a report listing all of USG's retail agents in California and their contact information. ECF No. 1-2 at 75. He blind-copied his personal email

account on an internal email message containing documents from an existing USG customer who wanted new coverage. ECF No. 1-2 at 78. Then, on his last day with USG, Bacon accessed a detailed spreadsheet showing all of the policies he placed through agents since January 1, 2015, the expiration dates of the policies, the names of the insureds, the names of the retail agents, and the names of the points of contact for those agents. ECF No. 1-2 at 75. Bacon also allegedly deleted unspecified information. ECF No. 1-2 at 98. Bacon did all this, according to USG, while planning his impending departure from the company. ECF No. 1-2 at 79-80.

Bacon contends that USG's allegations, even if true, fail to demonstrate he accessed USG's computer systems or altered its data without authorization or in excess of his authorization because all of USG's allegations point to conduct that took place prior to the end of his employment with USG and/or prior to when his access to the information was revoked. ECF No. 10 at 1, 8. Therefore, because he was authorized at all relevant times to access USG's computer systems and the confidential information, Bacon argues, USG has failed to state a claim under Section (a)(4) the CFAA. *Id.*

The Court must determine whether USG's allegations regarding Bacon's access to its computer systems prior to the end of his employment can, as a legal matter, support a claim for a violation of Section (a)(4). At the heart of this question lies the interpretation of two statutory terms: "without authorization" and "exceed[ing] authorized access." 18 U.S.C. § 1030(a)(4). The CFAA defines neither term, and the Third Circuit has not addressed the meaning of these terms in the context of a civil claim. *See QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 595 (E.D. Pa. 2016).

USG cites *United States v. Tolliver*, 451 Fed. App'x 97 (3d Cir. 2011), an unpublished opinion in a criminal appeal, for the proposition that an employee exceeds authorized access

6

under the CFAA when he accesses data on a computer system without a business purpose. In *Tolliver*, a bank employee accessed seven customer accounts using his employee number and password. *Id.* at 99. At the time, the employee had no reason to access those customer accounts because she was not assigned to contact any of those customers for sales purposes. *Id.* at 100. Employees of the bank were not permitted to look at customer accounts without a business purpose. *Id.* After accessing the accounts in violation of bank policy, the employee and two other individuals cashed fraudulent checks drawn on those customers' accounts. *Id.* at 98-99. The Third Circuit reasoned that there was sufficient evidence to uphold a criminal conviction of the employee for a violation of the CFAA because the employee "exceeded her authorized access." *Id.* at 103-04.

 *Tolliver* is distinguishable. First, the bank employee was charged with a violation of a different portion of the statute: Section (a)(2). 18 U.S.C. § 1030(a)(2)(A). That Section specifically prohibits the access of "information contained in a financial record of a financial institution" without authorization or by exceeding authorization. *Id.* The employee in *Tolliver*, moreover, was explicitly prohibited from viewing the customer data that she accessed because she was not assigned to contact those customers. *Id.* at 100. USG does not allege that Bacon was not allowed to view the data he accessed in the normal course of his employment. Rather than taking issue with *what* data Bacon accessed or *when* accessed it, USG instead alleges Bacon violated the CFAA because of *why* he accessed it—to assist one of USG's competitors. ECF No. 11 at 12.

 Also critical to the Court's conclusion that *Tolliver* is distinguishable is the fact that federal courts in this Circuit have examined the meanings of "without authorization" and "exceed[ing] authorized access" in a plethora of cases similar to this one; in those cases, those

courts have consistently held that liability under Section (a)(4) of the CFAA does not lie where, as here, an employee has permission to view certain information in his employer's computer system—even if he uses that information for the benefit of a competing company. In *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576 (E.D. Pa. 2016), for example, Judge Beetlestone recently concluded that employees who have permission to access a computer for any purpose cannot act "without authorization" unless and until their authorization to access the computer is specifically rescinded or revoked. *Id.* at 595-96. In *Advanced Fluid Systems, Inc. v. Huber*, 28 F. Supp. 3d 306 (M.D. Pa. 2014), the court likewise concluded that an employee granted access to a computer in connection with his employment is "authorized" to access that computer, regardless of his or her intent and regardless of whether internal policies limit the employee's use of the information accessed. *Id.* at 328-29. In *Carnegie Strategic Design Engineers, LLC v. Cloherty*, No. 13-cv-1112, 2014 WL 896636 (W.D. Pa. March 6, 2014), this Court concluded that the interpretation of the CFAA USG urges—where employees lose their authorization to access information as soon as they do so for the benefit of a third party—is contrary to the plain language of the statute. *Id.* at \*8-9. And federal courts across the country have reached the same result.[2]

---

[2] *See, e.g.*, *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (under the CFAA, "exceeds authorized access" refers to someone who is authorized to access or alter only certain data or files but accesses or alters other data or files, not to someone who has unrestricted physical access to a computer but is limited in the use to which he can put the information; the CFAA's purpose is not to prevent misappropriation of trade secrets); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) (an employee uses a computer without authorization only when he has not received permission to use the computer for any purpose or when permission has been rescinded by the employer); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012) (an employee is "authorized" under the CFAA to access his employer's protected computer when his employer approves or sanctions his admission to that computer; he accesses his employer's computer "without authorization" when he gains admission to the computer without his employer's approval; an employee only "exceeds authorized access" when the employee uses access to obtain or alter information that falls outside the bounds of his approved access); *Apple Mortgage Corp. v. Barenblatt*, 162 F. Supp. 3d 270 (S.D. N.Y. 2016) (where an employer has given an employee access to a computer and to the relevant files, the employee's subsequent misuse of the information or misappropriation with the intent to compete with his employer is not sufficient to violate the CFAA); *Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961 (D. Colo. 2016) ("exceeds authorized access" in the CFAA does not impose criminal liability on individuals who are authorized to access company data but do so for disloyal purposes; it applies only to individuals

8

Consistent with the weight of authority in this Circuit and from federal courts across the country, the Court concludes that—because USG has not pled that Bacon accessed or altered any information on USG's computer systems which he was not allowed to access or alter at the time—USG has failed to state a plausible claim for relief against Bacon under Section (a)(4) of the CFAA.

USG next asserts that Bacon violated Section (a)(5)(A) of the CFAA by "intentionally caus[ing] damage[,] without authorization, to a protected computer." ECF No. 11 at 13. In support of its claim, USG alleges Defendant Bacon deleted information from USG's computer systems in an attempt to conceal his conduct in soliciting USG's business for R-T Specialty and thereby caused damage to USG's computer systems and/or its data. ECF No. 1-2 at 98.

---

who are allowed to access a company computer but use that access to obtain data they are not allowed to see for any purpose; exceeds authorized access is equivalent to exceeds an authorization to access); *Cranel Inc. v. Pro Image Consultants Group, LLC*, 57 F. Supp. 3d 838 (S.D. Ohio 2014) (once an employee is granted "authorization" to access an employer's computer that stores confidential company data, that employee does not violate the CFAA regardless of how he subsequently uses the information); *Amphenol Corp. v. Paul*, 993 F. Supp. 2d 100 (D. Conn. 2014) (former employee did not "exceed authorized access" or act "without authorization" under CFAA when he downloaded confidential information of his former employer prior to his termination even though he later misused the information); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514 (S.D. N.Y. 2013) (the phrase "exceeds authorized access" speaks to computer access, not use of computer information; it therefore does not apply to the misuse of permitted access or the misappropriation of employer's information which an employee is authorized to access); *Power Equipment Maintenance, Inc. v. AIRCO Power Services, Inc.*, 953 F. Supp. 2d 1290 (S.D. Ga. 2013) ("without authorization" for purposes of civil liability under CFAA in the context of employment situations means employee was not granted access by his employer; similarly, "exceeds authorized access" means that, while employee's initial access was permitted, employee accessed information for which the employer had not provided permission); *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610 (E.D. Pa. 2013) (where employees had general authorization to access their work computers, the employees' subsequent misuse of files did not give rise to a claim under the CFAA; "exceeds authorized access" applies to inside hackers); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204 (S.D. N.Y. 2013) (where an employee has certain access to a computer or system associated with her job, that access will be construed as unauthorized within the meaning of the CFAA only where it occurs after the employee is terminated or resigns); *Ajuba Intern., LLC v. Saharia*, 871 F. Supp. 2d 671 (E.D. Mich. 2012) (where employer granted employee unrestricted access to its computers, confidential information, and trade secrets, it could not establish that his access was "without authorization" or in "excess of authority" under the CFAA despite the employee's later misappropriation of that information; exceeding authorized access occurs only when access of certain information is not permitted); *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912 (D. Minn. 2012) (the misuse or misappropriation of confidential information stored on a computer to which the defendant has authority to access does not give rise to liability under the CFAA); *Eagle v. Mortgan*, No. 11-cv-4303, 2011 WL 6739448 (E.D. Pa. December 22, 2011) (in the employer-employee context, an employee who may access a computer by the terms of his employment is "authorized" to use that computer for purposes of the CFAA even if his purpose in doing so is to misuse or misappropriate the employer's information).

In order for an alleged violation of Section (a)(5)(A) of the CFAA to survive a motion to dismiss, however, more is required. As to Bacon's *use* of confidential information in favor of R-T Specialty, USG must—at a minimum—allege that Bacon intended such use to cause damage to USG's computer system or data, not that he intended to harm USG generally. *See, e.g.*, *Consulting Professional Resources, Inc. v. Concise Technologies, LLC*, No. 09-cv-1201, 2010 WL 1337723, *8 (W.D. Pa. March 9, 2010) ("To understand the word 'damage' to include inappropriate use of data after it has been accessed lends credence to an interpretation of the CFAA which . . . this court has already rejected."); *Kalow & Springnut, LLP v. Commerce Corp.*, No. 07-cv-3442, 2008 WL 2557506, *3 (D.N.J. June 23, 2008) (intentional harm is an essential element of a claim under Section (a)(5)(A) of the CFAA, and a failure to allege intentional harm precludes such claim from surviving a motion to dismiss). As to USG's allegations regarding the *deletion* of its data, those allegations are—at least in the present version of the Complaint— threadbare recitations of the elements of a Section (a)(5)(A) claim without any factual 'meat on the bones.' USG has not pled with specificity, for example, what information was deleted, when the information was deleted, facts demonstrating why the information was deleted, whether the information can be—or has been—recovered, or concrete facts establishing damages. *See Advanced Fluid Systems, Inc. v. Huber*, 28 F. Supp. 3d 306, 330-31 (M.D. Pa. 2004) ("conclusory allegations, reflecting only a formulaic recitation of the [CFAA]'s loss element, are insufficient to satisfy federal pleading requirements.").

Accordingly, the Court concludes that—after removing the mere "labels and conclusions" from USG's Amended Complaint and disregarding those "legal conclusion[s] couched as [] factual allegation[s]," *Twombly*, 550 U.S. at 555—USG has failed to state a plausible claim for relief against Bacon under Section (a)(5)(A) of the CFAA.

### ii. Defendant R-T Specialty

USG makes no additional factual allegations supporting its claim in Count 12 that Defendant R-T Specialty violated the CFAA. Instead, USG argues that R-T Specialty is vicariously liable for Defendant Bacon's violations. ECF No. 11 at 15-17. Because the Court will dismiss USG's claims against Bacon for failure to state a claim under the CFAA, and because USG's claim against R-T Specialty under Count 12 rests only upon a theory of vicarious liability, USG's CFAA claim against R-T Specialty must also be dismissed.

### B. Counts 3 and 4: State Law Claims

As a preliminary matter, the Court must determine what law to apply in analyzing Counts 3 and 4—state law claims before this Court based upon the supplemental jurisdiction granted it by 28 U.S.C. § 1367(a).[3] When a federal district court hears state-law claims based upon supplemental jurisdiction, it applies the substantive law of the forum state, including, if applicable, the forum state's choice-of-law rules for the purposes of determining which state's law it should apply. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). Where the parties agree on the substantive state law that applies, however, a court may assume—without deciding—that that state's substantive law applies. *See USA Machinery Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999) ("Because the parties appear to be in agreement on [the choice-of-law] issue, we will assume, without deciding, that Pennsylvania law supplies the appropriate substantive rules."). Here, because the parties appear to agree that Pennsylvania substantive law applies, the Court will apply it.[4] *See* ECF No. 10 at 13; ECF No. 11 at 17; ECF No. 15 at 10.

---

[3] The Court concludes that USG's state law claims "derive from [the same] common nucleus of operative fact" as USG's claims arising under federal law. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997).

[4] In addition or in the alternative, if a Pennsylvania choice-of-law analysis were necessary, the Court concludes that such analysis would lead to the same result: the application of Pennsylvania law. Pennsylvania uses the "significant relationship" test of the Restatement (Second) of Conflicts of Laws. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir.

### i. Count 3: Breach of Fiduciary Duty (Defendants Bacon and R-T Specialty)

To allege a breach of fiduciary duty under Pennsylvania law, a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendant. *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005). Employees owe fiduciary duties to their employers, including both a fiduciary duty of loyalty and a fiduciary duty of care. *Colgate-Palmolive Co. v. Tandem Indus.*, 485 Fed. App'x 516, 518 (3d Cir. 2012); *PNC Mortgage v. Superior Mortgage Corp.*, No. 09-cv-05084, 2012 WL 628000, *26 (E.D. Pa. February 27, 2012); *Tyler v. O'Neill*, 994 F. Supp. 603, 612 (E.D. Pa. 1998). In Pennsylvania, the elements of a breach of fiduciary duty claim by an employer against an employee are: (1) that the employee negligently or intentionally failed to act in good faith and solely for the benefit of the employer in all matters for which he or she was employed; (2) that the employer suffered injury; and (3) that the employee's failure to act solely for the employer's benefit was a real factor in bringing about the employer's injuries. *See Colgate-Palmolive*, 485 Fed. App'x at 518.

Bacon and R-T Specialty contend Count 3 of USG's Amended Complaint should be dismissed because, under the gist of the action doctrine, USG's breach of fiduciary duty claims are duplicative of USG's claims for breach of contract alleged in Counts 1 and 2. *See* ECF No. 10 at 2; ECF No. 15 at 3.

---

2006). In applying that test, Pennsylvania courts look to each state's contacts with the accident or injury relating to the policies and interests underlying the particular issue before the court, weighing each state's contacts on a qualitative rather than quantitative scale. *Copolla v. Shaposka*, 439 Pa. 563, 566 (1970). Here, USG Insurance Services Michigan, Inc. and USG Holding, Inc. are Michigan corporations with their principal place of business in Michigan. ECF No. 1-2 at 61. First-named Plaintiff USG Insurance Services Inc., however, is a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* Although Defendant Bacon was a Regional Manager for both the Michigan and Pennsylvania Divisions of USG, his position was physically based in Pennsylvania when the conduct at issue allegedly occurred, he was allegedly living in Pennsylvania, his conduct allegedly occurred in Pennsylvania, and Defendant R-T Specialty allegedly has an office in Pennsylvania. *See id.* at 61-62, 74-83. Pennsylvania, therefore, appears to have the most significant relationship to these claims, and Pennsylvania courts would thus apply Pennsylvania law.

The Pennsylvania Supreme Court recently explained the gist of the action doctrine as follows:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. . . . Notably, and of relevance to the case at bar, our prior decisions . . . underscore that the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). A court begins by ascertaining the source of the duties allegedly breached. *Sunburst Paper, LLC v. Keating Fibre Int'l.,* No. 06-cv-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006). The gist of the action doctrine then bars the following categories of tort claims: those "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Id.* (citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002)).

Deciphering Pennsylvania law on the subject, the Third Circuit presciently observed that the gist of the action doctrine "cannot be captured by any precisely worded test;" it instead "call[s] for a fact-intensive judgment [by the court] as to the true nature of a claim." *Williams v.*

*Hilton Group PLC*, 93 Fed. App'x 384, 386 (3d Cir. 2004). In making such a judgment, courts should be cautious when considering whether to dismiss a claim under the gist of the action doctrine because the Federal Rules of Civil procedure allow parties to plead multiple claims as alternative theories of liability. *Orthovita, Inc. v. Erbe*, No. 07-cv-2395, 2008 WL 423446, \*4 (E.D. Pa. February 14, 2008).

### 1. Defendant Bacon

Count 3 of USG's Amended Complaint alleges that Bacon's fiduciary duty arose not from the parties' Agreement but from Bacon's employment by USG. ECF No. 1-2 at 85. Claims for breach of fiduciary duty are not barred by the gist of the action doctrine if the fiduciary duty at issue goes "beyond the particular obligations contained in" the parties' contract, and instead is imposed as a broader matter of social policy. *Bohler-Uddenholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 105 (3d Cir. 2001).

Perhaps owing to the fact-intensive nature of the inquiry required, courts have reached different results when analyzing breach of fiduciary claims between employers and employees who also have a relevant employment agreement. In *Freedom Medical, Inc. v. Gillespie,* for example, the plaintiff corporation alleged that a number of former employees had stolen its inventory and business opportunities in violation of various statutory, tort, and contractual duties. 634 F. Supp. 2d 490, 496 (E.D. Pa. 2007). The plaintiff's former vice president sought dismissal of a claim for breach of fiduciary duty, arguing that such a duty arose primarily from his employment contract. *Id.* at 517. The court disagreed, noting that a confidential relationship "give[s] rise to fiduciary duties under Pennsylvania law" and the complaint had alleged the defendant "occupied a trusted, central role in [plaintiff's] affairs." *Id.* Such a relationship, the court held, could give rise to an independent duty to refrain from breaching a fiduciary duty

14

under Pennsylvania law, and the claim therefore could not be dismissed under the gist of the action doctrine as duplicative of a claim for breach of the parties' employment contract. *Id.*

Similarly, in *PNC Mortgage v. Superior Mortgage Corp.,* the plaintiff company alleged that former employees had breached a fiduciary duty of loyalty. No. 09–cv–5084, 2012 WL 628000, at *26 (E.D. Pa. February 27, 2012). The court concluded that Pennsylvania "recognizes that employees, as agents of their employer, owe fiduciary duties of loyalty," which require them to "refrain from competing with the employer and from taking action on behalf of, or otherwise assisting, the employer's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the employer for the employee's own purpose or [that] of a third party." *Id.* A breach of fiduciary duty claim, the court explained, presents a situation "where the parties' obligations are not defined by the terms of contract, but rather by larger social policies embodied in the law of torts." *Id.* The plaintiff's breach of fiduciary duty claim was therefore not barred at the motion to dismiss stage by the gist of the action doctrine. *Id.*

In *Certainteed Ceilings*, however, the court reached the opposite result. There, the plaintiff company made only one factual allegation supporting its claim for breach of fiduciary duty against a defendant employee: that the employee disclosed confidential information and trade secrets. 2015 WL 410029 at *10. The very same conduct was alleged to be a breach of the parties' non-compete agreement. *Id.* The court found the breach of fiduciary claim barred under the Pennsylvania gist of the action doctrine for two reasons. First, the breach of fiduciary duty claim did not allege any facts that transcended the employee's obligations under the parties' agreement. *Id.* at *11. Second, the employer did not make any factual allegations giving rise to a

fiduciary duty under Pennsylvania law besides a lone conclusory assertion that the employee had been in a position of trust and confidence. *Id.*

Likewise, in *Brown & Brown*, the plaintiff company alleged that defendant employees breached their fiduciary duty when they planned and organized a business activity to compete with the company and solicited the company's customers "in violation of their contractual restrictions" and in "breach[ of] their [e]mployment [a]greements." 745 F. Supp. 2d at 620-21 (E.D. Pa. 2010). The plain language of the breach of fiduciary duty allegations made it clear that the employer was alleging the source of the employees' duties was the employment agreement. *Id.* Because the alleged breaches were inextricably intertwined with the employees' contractual obligations, the court concluded the breach of fiduciary duty claims were barred under Pennsylvania's gist of the action doctrine. *Id.* at 621.

Here, USG's allegations against Bacon are more akin to those in cases like *Freedom Medical* and *PNC Mortgage*. First, unlike in both *Certainteed Ceilings* and *Brown & Brown*, USG's claim that Bacon breached his fiduciary duty states at least one factual allegation that does not stem from the Agreement: USG alleges that Bacon breached his fiduciary duty, in part, by "failing to perform his job responsibilities in an adequate manner before resigning."[5] ECF No. 1-2 at 85-86. But more importantly, unlike in *Certainteed Ceilings*, USG's Amended Complaint contains a plethora of factual allegations demonstrating how Bacon's position with USG gave rise to fiduciary duties separate and apart from Bacon's obligations under the Agreement. In the eight years after he signed the Agreement, Bacon moved up the ladder at USG—first to Brokerage Manager of the Michigan Division, then to Production Manager, then to Branch

---

[5] If that were all there were, though, it would not be enough. Among other things, such an allegation would convert pretty much every employment dispute into a 'fiduciary duty lawsuit.' Further, on the facts here, if Bacon were such a bad employee, why on Earth did USG want him to hang around to facilitate the transition of his duties? Given all of Bacon's promotions, it strains credulity for Plaintiffs to claim that he was such a poor employee that the quality of his work breached his fiduciary duties.

Manager of the Pennsylvania Division, and then, in 2011, to Regional Manager overseeing both the Pennsylvania and Michigan divisions. ECF No. 1-2 at 71-73. During that time, Bacon was given responsibility and control over all aspects of revenue production, including managing sales personnel and sales teams, communicating sales and compliance information, mentoring and training team members, monitoring work performance, advising management of major issues, and attracting and retaining employees and customers. *Id.* at 71. Bacon was also given substantially increased access to USG's confidential information: he could access *all of* USG's client information, including customer lists, accounts, employee rosters, and internal reports. ECF No. 1-2 at 73.

There is—without a doubt—substantial overlap between USG's breach of contract and breach of fiduciary duty claims against Bacon. But USG's breach of fiduciary duty claim states enough distinct facts to give it a legal basis separate and apart from the Agreement. The Court therefore concludes that USG's breach of fiduciary claim as pled against Bacon in Count 3 is not precluded as a legal matter by the gist of the action doctrine.

## 2. Defendant R-T Specialty

Defendants next contend that USG has not pled sufficient factual allegations to impute liability for Bacon's alleged breach of fiduciary duty to R-T Specialty. USG responds that, under Pennsylvania law, a future employer like R-T Specialty may be vicariously liable for the actions of a new employee who breached his fiduciary duty to a previous employer in furtherance of the interests of his future employer.[6] ECF No. 11 at 21.

Pennsylvania adheres to the common law doctrine of respondeat superior. *Joseph v. United Workers Ass'n*, 343 Pa. 636, 638 (1942). Under that doctrine, an employer may be liable

---

[6] Because USG's claim of breach of fiduciary duty against R-T Specialty arises under vicarious liability—a theory of liability separate and distinct from USG's breach of contract claims against Bacon—the gist of the action doctrine does not preclude it.

17

for the torts of an employee where a master-servant relationship exists. *Id.* Such a relationship exists where the employer has (1) the right to select the employee, (2) the right to remove and discharge the employee, (3) the right to direct what work shall be done, and (4) the right to direct the manner in which that work shall be done. *Id.* Liability may be imputed to the master where a servant committed a tort during the course of his employment, within the scope of his employment, and while acting on the business of his master or for his master's benefit. *See Yortston v. Pennell*, 397 Pa. 28, 39 (1959); *Fitzgerald v. McCutcheon*, 270 Pa. Super. 102, 106 (Pa. Super. 1979). The servant's conduct must have been of the kind authorized by the master and within the general scope of the servant's authority. *Fitzgerald*, 270 Pa. Super. at 106-07. A master may be liable, for example, if he "put[] the servant in a place of trust or responsibility" and "commit[ted] to him management of his business," and the servant then, "through lack of judgment or discretion, or from infirmity or temper . . . goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another." *Brennan v. Merchant & Co.*, 205 Pa. 258, 261 (1903). An employer may be liable not only for its servant's negligence but also for intentional or criminal acts committed by its servant in the course of his employment. *Fitzgerald*, 270 Pa. Super. at 106; *see also Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. 2000). And an employer may be held liable for his employee's breach of fiduciary duty to another. *See Doebler's Pa. Hybrids v. Doebler*, No. 4:03-cv-1079, 2003 U.S. Dist. Lexis 27096 (M.D. Pa. November 13, 2013) (concluding that a claim for breach of fiduciary duty by an employee's former employer against his new employer on a theory of vicarious liability may survive a motion to dismiss); *Carroll v. John Hancock Distributors, Inc.*, No. 92-cv-5907, 1994 WL 87160, *4 (E.D. Pa. March 14, 1994) (noting that an employer may be liable for its employee's breach of fiduciary duty to a third party committed within the scope of his

employment even though the employer did not authorize or know of such conduct, and even if the employer forbade such acts); *see also Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 559-60 (1985) (noting that a principal may be vicariously liable to a third party "for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the scope of his employment, although the principal did not authorize, justify, participate in, or know of such misconduct or even if he forbade the acts or disapproved of them." Such liability will lie as a matter of public policy because a "principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger," and because a principal "cannot benefit of his [agent's] act and at the same time repudiate his authority."). The question, then, is whether a new employer can, as a legal matter, be held liable under a vicarious liability theory for its employee's breach of fiduciary duty to his previous employer on the facts USG alleges here.

In support of its vicarious liability theory, USG cites *Doebler's Pa. Hybrids v. Doebler*, No. 4:03-cv-1079, 2003 U.S. Dist. Lexis 27096 (M.D. Pa. November 13, 2013). There, the plaintiff company alleged that the defendant company breached its fiduciary duty after a former employee of the plaintiff company resigned his employment, formed defendant company, hired several of plaintiff company's employees, and proceeded to compete with plaintiff company. *Id.* at *1-2. The court concluded that the plaintiff company had stated a claim sufficient to survive a motion to dismiss where the defendant company assisted the employee in his alleged breaches of his fiduciary obligations to the plaintiff company. *Id.* at *11-14.

Defendants argue *Doebler* is "entirely distinguishable" but cite no cases to the contrary. ECF No. 15 at 12. The Court agrees that there are some facts which set *Doebler* apart from this case. First, *Doebler* was decided under the notice pleading standard that prevailed before

19

*Twombly* and *Iqbal. Id.* at *3. Moreover, the *Doebler* plaintiff stated a somewhat stronger case for vicarious liability: it alleged the employee formed the competing business while on the plaintiff's payroll. *Id.* at *1-2.

Nevertheless, in light of Pennsylvania law, USG has pled sufficient facts to survive a motion to dismiss its breach of fiduciary claim against R-T Specialty under a theory of vicarious liability. In addition to its allegations regarding Bacon's conduct, USG also alleges that R-T Specialty has a pattern of recruiting employees from competitors to steal business, R-T Specialty and Bacon discussed the use of business contacts Bacon made while working at USG, Bacon took the actions that allegedly breached his fiduciary duty to USG for the benefit of R-T Specialty, R-T Specialty knew about Bacon's alleged breaches of fiduciary duty, R-T Specialty specifically agreed with Bacon that he would open an office in competition with USG, R-T Specialty facilitated Bacon's breaches by providing him with administrative support and financial support necessary to compete, and R-T Specialty offered to cover Bacon's legal expenses in anticipation of USG filing suit against him. *See* ECF No. 1-2 at 74, 82, 86-87.

Accordingly, the Court concludes that—accepting all USG's allegations as true, and construing all reasonable inferences in its favor, *Fowler* 578 F.3d at 210—USG has stated a claim for breach of fiduciary duty against Defendant R-T Specialty on a theory of respondeat superior under Pennsylvania Law.

### ii. Count 4: Aiding and Abetting a Breach of Fiduciary Duty (Defendant R-T Specialty)

Count 4 of USG's Amended Complaint alleges that Defendant R-T Specialty is also liable for aiding and abetting Bacon's breach of fiduciary duty.[7]

---

[7] For the same reasons as those the Court discussed with respect to USG's claim that R-T Specialty is vicariously liable for Bacon's breach of fiduciary duty, *supra*, the Court concludes that this claim is not duplicative of USG's breach of contract claim, and the gist of the action doctrine therefore does not preclude it.

As an initial matter, the Court must determine whether USG can maintain a separate cause of action for aiding and abetting breach of fiduciary duty in addition to its claim of breach of fiduciary duty under a vicarious liability theory. The Pennsylvania Supreme Court recently explained that Pennsylvania law recognizes aiding and abetting a breach of fiduciary duty as a distinct cause of action. *Official Committee of Unsecured Creditors of Allegheny Health Educ. And Research Foundation v. PWC, LLP*, 605 Pa. 269, 293, n. 14 (2010). That the tort of aiding and abetting a breach of fiduciary duty is distinct from a claim for a breach of fiduciary duty under a theory of respondeat superior liability is evidenced by the fact that it requires a distinct set of proofs, including proof of substantial assistance or encouragement. Specifically, aiding and abetting a breach of fiduciary duty under Pennsylvania law requires: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach. *Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC*, 513 F. Supp. 2d 304, 318 (E.D. Pa. 2007) (citing *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Cmmw. 2003)). USG may, therefore, maintain a separate cause of action for aiding and abetting a breach of fiduciary duty.

In support of their Motion to Dismiss Count 4, Defendants once again argue USG has not pled sufficient factual allegations to impute liability to R-T Specialty. The Court must therefore determine whether USG alleges sufficient factual allegations to survive a motion to dismiss its claim for aiding and abetting a breach of fiduciary duty under Pennsylvania law.

A review of cases interpreting and applying Pennsylvania law is instructive. In *Adena, Inc. v. Cohn*, 162 F. Supp. 2d 351 (E.D. Pa. 2001), plaintiffs alleged that defendant, the president of a corporation, improperly used corporate funds to pay for personal expenses, including his personal lawyers. *Id.* The court found plaintiffs sufficiently stated a claim against the lawyers for

aiding and abetting the defendant's breach of fiduciary duty to the corporation. *Id.* at 357-58. No allegation of the lawyers' direct participation in the breach of fiduciary duty was necessary. *Id.* Even if it were, however, the court found plaintiffs sufficiently stated a claim simply by alleging that defendants were knowing and active participants in the breach. *Id.*

Likewise, in *Matlack Leasing, LLC v. Morison Cogen, LLP*, No. 09-cv-1570, 2010 WL 114883 (E.D. Pa. 2010), plaintiffs alleged that defendant, purchaser of a corporation, distributed money to himself from the corporation's cash flow but failed to make distributions in proportion to the other members according to their respective percentages of ownership, instead using those funds to finance his other businesses. *Id.* at *1-3. The court found plaintiffs sufficiently stated a claim against two of the defendant's accountants for aiding and abetting a breach of fiduciary duty under Pennsylvania law. *Id.* at *11. The complaint alleged that the defendant breached a fiduciary duty, that the accountants had knowledge of or were willfully blind to the breach, and that the accountants improperly concealed or failed to disclose the offending distributions. *Id.* Those facts, the court concluded, were sufficient under the *Twombly* and *Iqbal* plausibility standard to state a claim for aiding and abetting a breach of fiduciary duty. *Id.*

Here, as in *Adena* and *Matlock*, USG's factual allegations are sufficient to state a claim against R-T Specialty for aiding and abetting a breach of fiduciary duty under Pennsylvania law. USG alleges that R-T Specialty has a pattern of recruiting employees from competitors to steal business, R-T Specialty and Bacon discussed the use of business contacts Bacon made while working at USG, Bacon took the actions that allegedly breached his fiduciary duty to USG for the benefit of R-T Specialty, R-T Specialty knew about Bacon's alleged breaches of fiduciary duty, R-T Specialty specifically agreed with Bacon that he would open an office in competition with USG, R-T Specialty facilitated Bacon's breaches by providing him with administrative

support and financial support necessary to compete, and R-T Specialty offered to cover Bacon's legal expenses in anticipation of USG filing suit against him. *See* ECF No. 1-2 at 74, 82, 86-87.

Accordingly, the Court concludes that USG has stated sufficient factual allegations in Count 3 to support a claim for aiding and abetting a breach of fiduciary duty under Pennsylvania law.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 9) will be GRANTED as to Count 12 and Count 12 will be dismissed without prejudice. Plaintiffs shall have fourteen days to re-plead as to Count 12. Defendants' Motion to Dismiss will be DENIED in all other respects.

**Mark R. Hornak**
**United States District Judge**

Dated: November 22, 2016

cc: All counsel of record